Matter of Patsis (Legal Interpreting Servs., Inc.--Commissioner of Labor) (2022 NY Slip Op 00229)





Matter of Patsis (Legal Interpreting Servs., Inc.--Commissioner of Labor)


2022 NY Slip Op 00229


Decided on January 13, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:January 13, 2022

532067
[*1]In the Matter of the Claim of Louiza Patsis, Respondent. Legal Interpreting Services, Inc., Appellant. Commissioner of Labor, Respondent.

Calendar Date:November 15, 2021

Before:Egan Jr., J.P., Lynch, Clark, Aarons and Pritzker, JJ.

Greenberg Traurig, LLP, New York City (Jerrold F. Goldberg of counsel), for appellant.
Clea Weiss, Ithaca, for Louiza Patsis, respondent.
Letitia James, Attorney General, New York City (Gary Leibowitz of counsel), for Commissioner of Labor, respondent.



Egan Jr., J.P.
Appeal from two decisions of the Unemployment Insurance Appeal Board, filed March 5, 2020, which ruled, among other things, that Legal Interpreting Services, Inc. was liable for unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
Legal Interpreting Services, Inc. (hereinafter LIS) provides foreign language interpreting services to its clients through a database it maintains of individual linguists, such as claimant. When claimant stopped provided services, she applied for unemployment insurance benefits. The Unemployment Insurance Appeal Board ultimately determined that claimant was an employee of LIS and that LIS was liable for remuneration paid to her and others similarly situated. LIS appeals.
We affirm. "It is well settled that whether an employment relationship exists within the meaning of the unemployment insurance law is a question of fact, no one factor is determinative and the determination of the . . . [B]oard, if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence in the record that would have supported a contrary decision" (Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010] [internal quotation marks, brackets and citations omitted]; accord Matter of Grabois [A Taylored Affair, LLC-Commissioner of Labor], 187 AD3d 1261, 1262 [2020], lv dismissed 36 NY3d 1081 [2021]). "Substantial evidence is a minimal standard requiring less than a preponderance of the evidence. As such, if the evidence reasonably supports the Board's choice, we may not interpose our judgment to reach a contrary conclusion" (Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d 131, 136-137 [2020] [internal quotation marks, brackets and citations omitted]; see Matter of Rodriguez [Penn Mut. Life Ins. Co.-Commissioner of Labor], 193 AD3d 1190, 1191 [2021]).
The record establishes that claimant signed a written agreement specifying a negotiated rate of pay that contained several rules governing her conduct while providing services to LIS's clients. Although the agreement characterizes the rules as "Client Expectations," the agreement was drafted by LIS on its letterhead and there is no indication that the rules were the requirements of any of their clients. When LIS receives a request for interpretation services from a client, it sends out a mass email to the linguists in its database and the job is assigned on a first-come, first-served basis. LIS provides the linguist with the specifics on the assignment, including its date, time and location. The linguists are free to decline assignments but, once they accept an assignment, they must provide LIS at least 24 hours notice if they are unable to complete it. Linguists could provide a substitute in those situations. LIS required that linguists submit invoices after completing the assignments, and payment of the linguists is not [*2]contingent upon LIS being paid by its client. The agreement further barred the linguists from soliciting current or potential clients of LIS for a period of one year after the contract's termination. In light of the foregoing, we find that substantial evidence supports the Board's finding of an employment relationship and, therefore, it will not be disturbed, notwithstanding evidence that could support a contrary result (see Matter of Bin Yuan [Legal Interpreting Servs., Inc.-Commissioner of Labor], 140 AD3d 1550, 1551-1552 [2016], lv dismissed 29 NY3d 968 [2017]; Matter of Ruano [Legal Interpreting Servs., Inc.-Commissioner of Labor], 118 AD3d 1088, 1089 [2014], lv dismissed 24 NY3d 1039 [2014]).
LIS contends that the Board failed to follow Department of Labor guidelines adopted to assist in determining the existence of an employment relationship within the translating and interpreting industry. We disagree. The guidelines emphasize that "[n]o one single factor is controlling" (New York State Department of Labor, Guidelines for Determining Worker Status: Translating and Interpreting Industry, http://dol.ny.gov/
system/files/documents/2021/02/ia318.20.pdf [last updated Dec. 2020]) and "'we discern no inconsistency between the [Board's] decisions and such guidelines, which expressly adopt the well-established common-law tests of master and servant'" (Matter of Bin Yuan [Legal Interpreting Servs., Inc.-Commissioner of Labor], 140 AD3d at 1552, quoting Matter of Soo Tsui [Language Servs. Assoc., Inc-Commissioner of Labor], 135 AD3d 1098, 1100 [2016]). LIS's remaining contentions have been considered and found to be without merit.
Lynch, Clark, Aarons and Pritzker, JJ., concur.
ORDERED that the decisions are affirmed, without costs.